**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JANICE DeCOITO, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:07-cv-0330-SEB-TAB |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

*Pro se* plaintiff Janice DeCoito ("DeCoito") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. BACKGROUND**

DeCoito filed an application for DIB on February 9, 2001, and an application for SSI on June 13, 2001, alleging an onset date of disability of November 23, 2000. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on January 23, 2003. DeCoito was present, accompanied by her attorney. Medical and other records were introduced into evidence, and DeCoito and a vocational expert testified at the hearing. The ALJ issued a decision on February 13, 2003, denying benefits. On February 18, 2005, the Appeals Council remanded the decision to the ALJ. (R. at 68-71).

On June 23, 2005, a second hearing was held, at which DeCoito was present, with her daughter and attorney. DeCoito, her adult daughter, and a vocational expert testified.[1] The ALJ issued a decision on July 14, 2006, denying benefits. On January 12, 2007, the Appeals Council denied DeCoito's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the

---

[1]Contrary to the Commissioner's statement in his memorandum, no medical expert attended the hearing.

ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) DeCoito met the insured status requirements of the Act through December 31, 2006; (2) DeCoito had not engaged in substantial gainful activity since November 23, 2000, the alleged onset date; (3) DeCoito had the following severe impairments: reactive airway disease; obesity; chronic fatigue syndrome; fibromyalgia; peripheral polyneuropathy; degenerative disc disease with ankleodosis and spondylosis; obstructive sleep apnea; anxiety; depression; pain disorder; and headaches (20 C.F.R. §§ 404.1520(c) and 416.920(c)); (4) DeCoito did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) DeCoito had the residual functional capacity ("RFC") to perform simple and repetitive work with her lifting and carrying 50 pounds only occasionally and 25 pounds frequently; standing and walking for two hours in an eight hour day; sitting for six hours in an eight hour day; provided the work required no more than occasionally bending, squatting, or climbing of stairs or ramps; no kneeling, crawling or climbing of ropes, ladders, or scaffolds, and she should avoid walking on uneven surfaces; and avoid working at unprotected heights, around dangerous machinery, operating a motor vehicle, or being around open flames or large bodies of water; (6) DeCoito was unable to perform any past relevant work; (7) DeCoito was born on September 1, 1951 and was 49 years old on the alleged disability onset date, which is defined as a younger individual age 45-49, and at the time of the ALJ's decision, she was 54 years old, which is defined as closely approaching advanced age; (8) DeCoito had a high school education and had a Bachelor of Science degree and a Master's degree in Education and was able to communicate in English; (9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that DeCoito is "not disabled" whether or not she had transferable job skills; and (10) considering DeCoito's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that DeCoito could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that DeCoito had not been under a "disability" as defined in the Act from November 23, 2000, through the date of the ALJ's decision.

## II. DISCUSSION

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present

medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that DeCoito had "severe" impairments consisting of reactive airway disease, obesity, chronic fatigue syndrome ("CFS"), fibromyalgia, peripheral polyneuropathy, degenerative disc disease with ankleodosis and spondylosis, obstructive sleep apnea, anxiety, depression, pain disorder, and headaches, but that she could perform a significant number of jobs that exist in the national economy, and therefore, was not disabled. DeCoito argues that the ALJ's decision is not supported by substantial evidence. Specifically, DeCoito contends that the ALJ failed to consider the appropriate listings, erred in finding her impairments did not satisfy any listing, failed to adequately consider the severity of her fatigue and fibromyalgia, improperly discounted her credibility, and ignored evidence that favored DeCoito. DeCoito also alleges that numerous documents are missing from the transcript.

### 1. Listings

DeCoito first argues that the ALJ failed to consider the appropriate listings in relation to her CFS and fibromyalgia. She contends the ALJ should have considered Listing 12.04 (affective disorders) for CFS, instead of Listing 1.02 (major dysfunction of a joint(s) (due to any cause)). The ALJ did, however, evaluate DeCoito's "depression, anxiety, and pain disorder using the criteria of Listings 12.04 and 12.06." (R. at 22). In addition, the reviewing State Agency psychologists opined that DeCoito's mental impairments did not satisfy or equal Listing 12.04 (affective disorders) or 12.06 (anxiety related disorders). (R. at 283-300).

DeCoito further argues that with regard to her fibromyalgia the ALJ should have considered Listing 14.02 (systemic lupus erythematosus) or 14.06 (undifferentiated connective tissue disorder) instead of Listing 1.02. The court need not decide whether fibromyalgia could properly be considered under Listing 14.02 or 14.06 because no physician opined that any of DeCoito's impairments satisfied a listing. DeCoito, as the claimant, "has the burden of showing that [her] impairments meet a listing, and [she] must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). With the possible exception of Listing 12.04 as discussed below, substantial evidence supports the ALJ's evaluation of the listings. Accordingly, DeCoito's contention that the ALJ considered the incorrect listings is not persuasive.

DeCoito also contends that the ALJ used an incomplete definition of "ineffective ambulation" when he considered whether her disc disease satisfied Listing 1.04A, which requires, in part, a finding that the claimant has an inability to ambulate effectively. (R. at 21-22). The ALJ did properly define the inability to ambulate effectively as "an extreme limitation of the ability to walk." (R. at 22); Listing 1.00 Musculoskeletal System, Appendix 1 to Subpart P of Part 404.[2] DeCoito discusses various examples of ineffective ambulation listed in the regulation, such as the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. DeCoito suggests that there is evidence of record showing that she satisfies these definitions of an inability to ambulate. A consulting examining physician did find marked decreased strength in the lower extremities and difficulty performing tandem walking. (R. at 554). Her treating physician also opined that DeCoito's chronic pain impeded her ability to ambulate. (R. at 561). DeCoito acknowledges, however, that there is conflicting evidence as to this issue.

Even if the court assumes that there is "substantial evidence" showing an "inability

---

[2]The ALJ's finding that there was no nerve impingement (R. at 26, 28), however, is based on Ex. F. at 28. The court has not been able to review this exhibit, as there is no Exhibit F in the transcript.

to ambulate effectively," the court's limited role on judicial review prevents it from making such a finding under the circumstances presented in this case. Rather, if the *ALJ's* view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quotation omitted). The court cannot resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). Accordingly, because substantial evidence, which may be less than a preponderance of the evidence, *Schmidt*, 496 F.3d at 842, supports the ALJ's determination that DeCoito's disc disease did not satisfy all of the criteria of Listing 1.04, the court cannot reverse the decision on this basis.

### 2.     Non-exertional symptoms

The remainder of DeCoito's claims are based on a single view of the ALJ's decision. DeCoito argues that the ALJ mischaracterized the record and failed to consider all of the evidence when he evaluated her non-exertional symptoms including fatigue, pain, and her difficulty with concentration and memory. She contends that these errors tainted the ALJ's findings relating to Listing 12.04, the weight of her treating psychologist's opinions, and DeCoito's credibility, all of which resulted in an RFC determination that is not supported by substantial evidence.

DeCoito argues that the ALJ overstated her ability to perform daily activities. The ALJ considered DeCoito's daily activities when he evaluated DeCoito's mental impairments under the B criteria of Listings 12.04 and 12.06, and when he evaluated her credibility. (R. at 23, 30). The ALJ determined that DeCoito's activities of daily living and social functioning were only mildly affected/limited. (R. at 23). He found a moderate limitation in her ability to maintain concentration, persistence, or pace. *Id.* He further concluded that DeCoito's daily activities were "inconsistent with her allegations concerning the frequency and severity of her symptoms." (R. at 30).

With regard to Listing 12.04, the ALJ noted that there is evidence that DeCoito "has some fatigue, but it does not establish that work would be expected to cause her to decompensate." (R. at 23). The ALJ acknowledged that in August 2003, treating psychologist Dr. Horton opined that DeCoito would likely decompensate if required to be in an environment that called for sustained attention, quick process of information and physical demands. (R. at 32, 336). The ALJ cites to no other medical source opinion on this issue. The ALJ rejected Dr. Horton's opinion based on the ALJ's view of the level of DeCoito's daily activities. (R. at 32).

The ALJ also did not give controlling weight to Dr. Horton's opinion that DeCoito had "poor" ability to perform activities within a schedule, maintain regular attendance, complete a normal work-day and work-week without interruptions from psychologically based

5

symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 32). The ALJ rejected this opinion because the ALJ believed that Dr. Horton based the opinion on DeCoito's subjective reports of her physical limitations. *Id.* In view of Dr. Horton's opinions, the ALJ's conclusion that "[n[one of the claimant's treating physicians have placed any restrictions on her work activities" and that his RFC "is not inconsistent with any treating physician opinion" misstates the record. (R. at 28). Again, the ALJ's view of DeCoito's subjective symptoms played a critical role in the evaluation of Dr. Horton's opinions.

With respect to DeCoito's daily activities, the ALJ acknowledged that DeCoito testified that she only left her home to attend doctors' appointments and to volunteer at Riley once a week for three hours. (R. at 23). The ALJ recited that DeCoito enjoyed exercise activities at Ladies Only, she participated in many group therapy activities and enjoyed reading. *Id.* The ALJ stated that DeCoito was able to go to Brown County by herself, visit her niece in Virginia, drive her daughter to work, help with a yard sale, and take various other trips. *Id.* The court is unable to review the record as to some of these findings. The ALJ cites to Exhibits E, H, and N in support of his findings that DeCoito visited her niece, drove her daughter to work, and took other trips. These exhibits, as discussed later in this Entry, are not included in the record.

The ALJ also relied on the following in determining that DeCoito's reported daily activities were not consistent with the alleged frequency and severity of her symptoms: she went to a New Year's Eve party at her church, she worked at home cleaning her house, visited her father on Wednesday and Sundays, did yard work, went to the library, visited with friends, went to the pool to swim, went to the movies, in June 2002 she went to Virginia for a funeral, she read books, went to church, and helped her father with the computer. (R. at 30-31, citing Ex. 1F at 97, 102, 104, 105, 106, 111, 112, 113, 115; Ex. 1E at 55-56, and Ex. E at 3-11, 6). These activities, even if all taken as accurate, which DeCoito disputes, do not represent activities done on a daily basis.

The ALJ further relied on the fact that DeCoito had told Dr. Horton that she baked four batches of cookies at Christmas 2000 and cooked Christmas dinner. (R. at 30, reciting Ex. 1F at 102). The ALJ did not mention, however, that that same document noted that after she baked and cooked, DeCoito was in bed for four days due to fatigue and she had crying spells in bed and thoughts of suicide. (R. at 502, Ex. 1F at 102). On August 27, 2001, DeCoito reported that she had "very few 'social events.'" (R. at 618). She reported that she went to her father's house twice a week for dinner. She met a friend for lunch once a month, which helped take her mind off her troubles and she felt less fatigued for a couple hours after lunch. (R. at 618-619, Ex. 1E at 55-56). From this report, the ALJ simply concluded that DeCoito "reported socializing with friends and family." (R. at 30). It is these types of somewhat loose representations of the evidence that DeCoito argues misrepresent the reality of her abilities. Somewhat less notable, a report by Dr. Horton indicated that DeCoito's father had had surgery in August 2003 and she visited him "almost daily." (R. at 316). The ALJ recited that she visited her sick father on a "daily" basis. (R. at 23). The record indicates, however, that when she did visit him, she could only stay for a limited

6

period of time and her sister from Virginia had to take on the primary role in caring for him. (R. at 185).

The ALJ did not mention DeCoito's "fatigue questionnaire" in which she reported that she felt tired all of the time. (R. at 626-628, Ex. 1E at 46-48). Any type of exertion or prolonged activity made the fatigue worse. (R. at 627). She slept anywhere from 8 to 23 hours a day, usually 12 hours; she needed to rest several times a day for one to two hours at a time; she could only shop for short periods of time, and when she did she shopped at stores that had electric carts or else she had to lean heavily on a grocery cart; she no longer cooked meals and instead ate ready-to-eat or easy-to-fix meals of microwaved food, sandwiches or soup; she only did her dishes two or three times a week and had to sit down while she did them; she went swimming once or twice a week at Ladies Only and this is the only time she took a shower. (R. at 626-628).

DeCoito reported to a pain management medical source in December 2001 that she tried to swim because it did not put pressure on her joints, but that it took her two days to recover from a 20 minute swimming workout. (R. at 248). This explanation was not noted by the ALJ. Again, these circumstances support DeCoito's contention that the ALJ improperly selected evidence that favored his conclusion that she was "not disabled."

The ALJ discussed DeCoito's ability to perform gross and dexterous movements, noting that among other things, she was able to "pull weeds, prune bushes and trees" and concluding that DeCoito did not have problems in those areas. (R. at 21, citing Ex.1E at 39 (636)). What that exhibit actually says is that DeCoito had been able to sit on a stool in her yard and pull weeds and prune bushes and trees, that she did that daily for about a week for anywhere from ½ hour up to 3 hours, but 3 hours was too long and caused her to be too tired to do anything for a few days. (R. at 636). At the time of that writing, May 27, 2001, she had not done any yard work for over two weeks. *Id.* The impression one takes away from the discussion of her ability to do that yard work changes significantly when the report is considered in its entirety.

Although the ALJ need not discuss every piece of evidence, he may not "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In this case the ALJ selected portions of the record to conclude that DeCoito's symptoms were not as severe as the complete record indicates. The court "require[s] an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies." *Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007). The ALJ did not provide such an explanation.

The ALJ acknowledged the fact that fibromyalgia "has very few objective physical signs, and the degree of limitation that it produces depends on the extent to which the claimant's symptoms are credible." (R. at 29, citing *Estok v. Apfel*, 152 F.3d 636 (7th Cir. 1998); and *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). He also referenced SSR 99-2p, which serves as a guide for evaluating chronic fatigue syndrome. (R. at 29). He determined that DeCoito experienced fatigue and pain, but he concluded that restricting

DeCoito to simple and repetitive tasks accommodated her "alleged fatigue, memory and concentration problems." (R. at 30). The ALJ does not explain, nor is it apparent, however, how such a restriction would accommodate her symptoms of severe fatigue.

The ALJ concluded that "although I do not doubt that the claimant has a variety of physical and mental symptoms, I do not find credible evidence of symptoms of such a frequency, duration, or intensity as to prevent her from working at the level I have assessed." (R. at 30). Reliance on a claimant's minimal daily activities does not form an adequate basis to discredit her allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"). As noted above, most of the activities discussed by the ALJ were not performed on a daily basis. In addition, none of the activities cited by the ALJ or reported by DeCoito required sustained activity, strength, or mobility.

The record reflects that severe fatigue was either reported to or observed by virtually every medical provider DeCoito saw during the period of time at issue. *See e.g.,* (R. at 264, 243-248, 309, 322, 399-401, 415, 431, 491, 507, 522-523, 528, 538). She was referred to an Indiana University clinic for chronic fatigue. She was diagnosed with CFS and fibromyalgia. The ALJ cites no evidence showing that DeCoito's complaints were that of a malingerer or that any treating source found her to lack credibility. The ALJ failed to explain why DeCoito's nonexertional limitations of fatigue, pain, and weakness were not severe enough to restrict her from being able to perform work activities on a regular and continuing basis. *See* SSR 96-8p ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Although the court grants special deference to the credibility determination made by the ALJ and generally will not overturn it unless it is "patently wrong," in this case the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusions. *See Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006) (ALJ's decision remanded because ALJ's reasons for his adverse credibility finding were flawed); *Zurawski v. Halter,* 245 F.3d 881, 887-88 (7th Cir.2001). Therefore, the court cannot affirm the ALJ's credibility analysis.

It is undisputed that DeCoito's CFS and fibromyalgia symptoms cannot be supported by objective evidence. *Sarchet,* 78 F.3d at 306 (the symptoms of fibromyalgia are "entirely subjective."). Therefore, the inquiry must turn to "other evidence." Other evidence includes "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a). The agency "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2).

Of significance in this case is the fact that the ALJ did not mention the testimony and/or reports provided by DeCoito's adult daughter, sister and father. Such reports were requested by the Social Security Administration. The ALJ did not explain whether he considered these sources to be credible. He ignored them altogether. Such statements paint a picture of a woman who is severely limited, whose symptoms have worsened over time, and who no longer can perform a majority of her normal daily activities due to constant fatigue and pain. (R. at 155-162, 174-177, 182-186, 188-196, 621-625). According to these reports, DeCoito is no longer able to perform even simple housekeeping chores such as doing laundry or cooking. She rarely goes out. Her daughter even has to help her take care of her cat. (R. at 156). If the ALJ did not find these statements to be credible, he did not explain on what basis he made that determination. If the statements were accepted as credible, the treating psychologist's view of DeCoito's abilities is substantially consistent with such reports. Moreover, the restrictions drawn from this evidence and DeCoito's own reports would also alter the findings associated with the listing and RFC determinations. In other words, absent the ALJ's careful articulation of this critical evidence, the court cannot affirm the decision. Because objective evidence cannot exist to support such impairments as CFS and fibromyalgia, it is of utmost importance that the ALJ fairly consider the subjective evidence of DeCoito's complaints and third party reports. Under these circumstances, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted). Substantial evidence does not support the ALJ's finding that the level of DeCoito's daily activities failed to support her allegations of fatigue and pain.

The ALJ rejected DeCoito's allegations of forgetfulness and an inability to concentrate by reasoning that she had served as an executor for her father's estate, worked with lawyers, attended court hearings, and conducted yard sales and auctions to dispose of property. (R. at 31). He further noted that DeCoito traveled to Florida to assist her sister in managing the estate of another deceased family member. (R. at 22). The ALJ does not explain, however, how the responsibilities inherent in being executor would necessarily be inconsistent with DeCoito's allegations of forgetfulness and difficulty concentrating. The ALJ did not inquire as to whether she had difficulties in performing the tasks required for the estate matters. DeCoito testified that her sister helped her with the estate and that DeCoito had not been able to get the estate matters completed within a year. (R. at 756).  Moreover, DeCoito testified that near the end of when she worked as a teacher, she had memory problems, she often misplaced pens, books, and chalk. (R. at 738-39). She further testified that in the middle of a sentence she would forget what she was going to say and she would go into a room and forget why she went there. (R. at 757-58). Treating psychologist Dr. Horton noted in March 2001 that DeCoito occasionally exhibited word-finding difficulties. (R. at 558). Dr. Horton also opined that DeCoito's chronic pain impeded her ability to stay on task and concentrate (as well as her ability to ambulate

and attain restful sleep). (R. at 561). In January 2002, DeCoito complained to Dr. Goshorn that she had difficulty with memory and finding the right words. (R. at 261-62). In this instance as well, the ALJ's reasons for discrediting DeCoito's allegations of forgetfulness and inability to concentrate do not follow from the evidence he cites.

The other circumstance that compels the court to remand this action for further consideration is the fact that the record appears to be incomplete. For example, the ALJ cites to Ex. F at 39 in support of his statement that treating physician Dr. Farr "declined to say the claimant was disabled." (R. at 28). The court cannot evaluate the context or meaning of this comment because it cannot locate Exhibit F in the transcript. Indeed, DeCoito points out that numerous other documents referenced by the ALJ are not included in the record, including C, D, E, H, I, J, and N. DeCoito also alleges that an entire year of notes from Dr. Horton's records (dating from June 2001 through August 2002) and some records from the Pain Management Specialists of Indianapolis (*e.g.,* July 13, 2001 note referenced, R. at 26) are not contained in the record. It might simply be a problem of erroneous labeling, but that is not apparent from the record and the court cannot presume any particular explanation. Absent these documents, the court cannot provide meaningful judicial review.

## III. CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions at step three and step five of the sequential analysis are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/31/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana